■ In the Matter of "FEMALE" B. (ANONYMOUS), Also Known as DOLORES B. (ANONYMOUS). LITTLE FLOWER CHILDREN'S SERVICES, Respondent, v GLORIA B. (ANONYMOUS), Appellant.—In a proceeding pursuant to article 6 of the Family Court Act to *inter alia* declare a child to be permanently neglected, the appeal is from an order of the Family Court, Kings County, dated April 29, 1975, which, after hearings, declared the said child permanently neglected, terminated parental custody, awarded custody of the child to petitioner and denied the natural mother's request for visitation. Order affirmed, without costs. No opinion. Hopkins, Acting P. J., Latham, Brennan and Munder, JJ., concur. Martuscello, J., dissents and votes to reverse the order and remit the proceeding to the Family Court, with the following memorandum: On the record herein, the infant is not a "permanently neglected child" within the intendment of sections 611 and 614 of the Family Court Act. Although the recent amendments of these sections are to the effect that a child is to be deemed permanently neglected if the parent has failed for a period of more than one year substantially to maintain contact with *or* plan for the future of the child, the gravamen still is neglect by the parent amounting to an abandonment of the child. No less than that justifies the exercise of the awesome responsibility of permanently withdrawing a child from its parent (cf. *Matter of Bistany,* 239 NY 19; *Matter of W. v G.,* 34 NY2d 76, 80; *Matter of O.,* 47 AD2d 829; *Matter of M. R.,* 76 Misc 2d 433). The regularity of contact by appellant is unquestioned. Twice a month this 49-year-old mother traveled from Manhattan to Wading River, in Suffolk County, to visit her six-year-old daughter. This conduct goes counter to any intent on her part to abandon the child. True it is that appellant has failed to make sufficient plans for the return of her child. The record, however, indicates that this is because of a generally inadequate and defeatist attitude towards life itself, which makes it difficult for her to plan for *anything.* Thus, she has remained in the same apartment for 26 years—an apartment with the bathroom in the kitchen, a leaky roof, windows that are constantly falling out and walls that are crumbling and falling. She has been offered an opportunity to move with the aid of welfare funds, yet her apparent debility of will has prevented her from making the move. Also, once having started to work at night, she became nervous when she had to work days. Apparently any change of life style is fraught with fears and tension. It may be that her generalized lassitude is so ingrained that she cannot make the minimum plans necessary for return of her child, i.e., to move, to arrange for day care of the child (if the mother works) or to care for the child herself (if she is on welfare). The record, however, does not conclusively so indicate. She should not be punished in so devastating a fashion until we are certain that, even with the aid of proper counseling, there is no hope for a reconstitution of the family unit. In short, I interpret the statutes to mean that failure to plan for the future of the child may be utilized as the sole basis for a finding of permanent neglect only where such failure (a) is clearly indicative of an intention to abandon the child or (b) is based on emotional, psychological or mental inadequacy and the failure continues notwithstanding the studied assistance of available agencies. I would therefore reverse the order and remit this proceeding to the Family Court for a hearing to be held six months from the date of this decision, at which it shall be determined whether the mother, notwithstanding social

service and allied counseling, has remained unable or unwilling to plan for the future of the child or whether, on the other hand, she has properly planned therefor. In the interim, custody and visitation should remain in *status quo* and the mother should make herself available for social service and psychological help.

